**UNITED STATES of America, Appellee,**

v.

**Louis MALPESO, Jr., Defendant–Appellant.**

No. 1485, Docket 96–1716.

United States Court of Appeals, Second Circuit.

Argued April 9, 1997.

Decided Sept. 16, 1997.

Stephen D. Kelly, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Brooklyn, NY, David C. James, Andrew Weissmann, Assistant United States Attorneys, of counsel), for Appellee.

Gina-Marie Reitano, New York City (Margaret E. Alverson, New York City, on the brief), for Defendant–Appellant.

Before: VAN GRAAFEILAND, WALKER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Defendant Louis Malpeso appeals from an order of restitution imposed as part of his sentence in the United States District Court for the Eastern District of New York, (Weinstein, *J.*). The defendant was convicted on a guilty plea to extortionate debt collection under 18 U.S.C. § 894. Judge Weinstein ordered that Malpeso pay restitution to the Federal Bureau of Investigation to compensate for its payment of the costs of relocating Malpeso's victim. On appeal, Malpeso argues that the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663–64, does not provide for payment to the FBI under these circumstances, and that the district court made improper findings as to the costs of the relocation and Malpeso's ability to pay. We reject the claims, and affirm the judgment.

*Background*

In January of 1995, Malpeso, through an organized crime consortium, lent John Burnham $100,000 with interest at the rate of 3% per week. After several months, Burnham's payments fell behind. Malpeso began to threaten Burnham and his family, demanding payment of his debts. Malpeso told Burnham that he and his family had nearly been killed the night before, that he had "about a three-hour life expectancy," that if he tried to run, Malpeso's people—members of the Colombo crime family—would hunt him down and kill him, and that if he went to the police and anyone were arrested, Malpeso's friends would find Burnham and kill him.

On February 23, 1996, as a result of Burnham's cooperation with the FBI, Malpeso was arrested for extortion under 18 U.S.C. § 894. Just prior to the arrest, the FBI

relocated the destitute Burnham family away from the New York area in order to protect them from Malpeso and his confederates. The FBI incurred substantial expenses in the relocation.

On May 8, 1996, Malpeso pled guilty to extortionate debt collection, in violation of 18 U.S.C. § 894. The probation department determined in the presentence report ("PSR") that Malpeso was able to pay restitution and a fine. This determination was based on his ability to work, his interest in his $300,000 home and other assets, and his failure to provide additional requested documentation related to his financial condition.

At sentencing, Malpeso stipulated to the costs incurred by the FBI for relocation of the Burnham family, and waived a hearing on his ability to pay a fine.

Judge Weinstein sentenced Malpeso to 27 months in prison and three years of supervised release, and ordered him to pay (in addition to a fine and special assessment) restitution to the FBI under the VWPA for the cost of moving the Burnhams. Judge Weinstein found that the FBI's decision to relocate Burnham and his family was a direct and necessary response to the defendant's threats, as the cost of relocation would not have been incurred were it not for Malpeso's credible threats. The FBI's payment constituted an advance of the expense that the Burnhams would have had to incur. The court concluded that these costs are subject to restitution under 18 U.S.C. § 3663(b)(4)(1994).[1]

### Discussion

■ Malpeso contends that restitution for the relocation of the Burnham family was not authorized by law.

■ Orders of restitution may be reversed only for an abuse of discretion. *United States v. Harris,* 79 F.3d 223, 232 (2d Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 142, 136 L.Ed.2d 89 (1996). We find no such abuse here.

Under the VWPA, courts are authorized to order defendants to make restitution to "any victim" of the offense of conviction. 18 U.S.C. § 3663(a)(1)(1994). The statute defines a "victim" as, *inter alia,* "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2)(1994). Reimbursement is provided for "necessary ... child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4)(1994).

Finally, the statute provides that "the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation." 18 U.S.C. § 3663(e)(1)(1994). "The order of restitution shall require the defendant to make restitution directly to the victim or other person eligible under this section." 18 U.S.C. § 3663(f)(4)(1994). In *Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990), the Supreme Court ruled that restitution may be awarded only to compensate harm that is caused by the conduct giving rise to the defendant's conviction.

Analyzing these provisions in accordance with *Hughey,* we conclude as follows: It is clear that Burnham is a victim within the definition of the VWPA, having been the direct object of Malpeso's extortionate threats. Malpeso does not contend otherwise.

The relocation of the Burnhams was a harm directly caused by Malpeso's threats of violence, which included telling Burnham that he had "about a three hour life expectancy" and that his wife and children would be killed. If Burnham had paid the costs of relocating himself and his family, which he

---

1. The VWPA was amended in 1996 by the Mandatory Victims Restitution Act of 1996, Pub.L. No. 104-132, Title II, Subtitle A, § 201 *et seq.,* 110 Stat. 1227 (April 24, 1996), which governs actions dating from April 24, 1996. Neither party in this action argues that the new version of the statute should apply, since it might have detrimental ex post facto effects on the defendant.

was not financially able to do, the costs would have been a compensable loss, under § 3663(b)(4), as "necessary" transportation and other expenses "related to [his] participation in the investigation or prosecution of the offense." It was reasonable to conclude that in light of Malpeso's threats, Burnham would not be able to participate in the investigation or prosecution of Malpeso unless he were relocated and hidden from Malpeso's associates.

Finally, as noted, the VWPA authorizes sentencing courts to order restitution to third parties that compensate victims for their losses. 18 U.S.C. § 3663(e)(1)(1994). The FBI qualifies as a "person who has compensated the victim."

Courts have broadly construed this provision to permit awards of restitution to institutions and government agencies that have compensated victims of a defendant's criminal conduct. *See, e.g., United States v. Atkinson*, 788 F.2d 900, 905 (2d Cir.1986) (insurance company, which had reimbursed victim bank for losses due to armed robbery, compensable under VWPA); *United States v. Cloud*, 872 F.2d 846, 853 (9th Cir. 1989) (insurance company, which had reimbursed victim bank for losses due to bank fraud, compensable under VWPA); *United States v. Sunrhodes*, 831 F.2d 1537, 1545–46 (10th Cir.1987) (Indian Health Service, which had reimbursed medical practitioners for costs of treating victims of shooting, compensable under VWPA).

It is true that the FBI paid Burnham's costs up front, rather than compensating him for costs he had previously borne. We recognize that this is not within the strict language of the statute. But there is no significant functional or economic difference between the indemnitor's prior payment of the victim's expense and subsequent reimbursement. We conclude that the statute authorizes restitution for the FBI's payment of Burnham's relocation expenses. We therefore reject Malpeso's challenge to the sentencing court's order that restitution be paid to the FBI.

As to Malpeso's claims that the district court made improper factual findings on the costs of the relocation and Malpeso's ability to pay restitution, these claims are waived. Because Malpeso stipulated to the costs of the relocation and explicitly waived his right to a hearing on the amount of the restitution and on his ability to pay, these contentions may not be raised on appeal. *See United States v. Yu–Leung*, 51 F.3d 1116, 1122 (2d Cir.1995).

*Conclusion*

We affirm the district court's order of restitution.